UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT JEFFREY FARMER, | |
| Petitioner, | 3:09-cv-00379-RCJ-RAM |
| vs. | |
| E.K. McDANIEL, *et al.*, | **ORDER** |
| Respondents, | |

This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, by Robert Jeffrey Farmer. Respondents have filed a motion to dismiss the petition in which they raise both procedural defenses to the petition and arguments addressing the substantive merits of the petition.

In 1984, Farmer pleaded guilty to first degree murder in the Eighth Judicial District Court for Nevada. A three-judge panel, appointed under then-existing Nevada law to conduct a penalty hearing, sentenced him to death. In January 2007, the State of Nevada stipulated that Farmer's death penalty be set aside because two of the aggravating circumstances supporting the penalty had been rendered invalid pursuant to *McConnell v. State*, 102 P.3d 606 (Nev. 2004).[1] Currently in custody pursuant to several other convictions, Farmer contends that, under the Double Jeopardy Clause of the United States Constitution, the State is prohibited from seeking the death penalty against him because the three-judge

///

---

[1] In *McConnell*, the Nevada Supreme Court ruled that it is "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated." *McConnell*, 102 P.3d at 624.

panel impliedly acquitted him on aggravating circumstances contained in the State's amended notice of intent to seek the death penalty.

*Factual and procedural background*

On January 18, 1982, Robert Jeffrey Farmer was driving from Reno to Las Vegas in a car stolen from Thomas Kane, a man he had just stabbed to death. Along the way, he picked up two hitchhikers, Archie Blackcrow and Melanie Marks. After running the car out of gas, the three hitched a ride to Las Vegas where they encountered Greg Gelunas, a cab driver. After spending the evening drinking alcohol and smoking marijuana with Farmer, Blackcrow and Marks, Gelunas offered them his backyard as a place to sleep for the night.

At some point that night. Farmer went to the back door of the house, called for Gelunas, and subsequently stabbed him to death with a knife. Farmer, Blackcrow and Marks left in Gelunas's car and drove to Arizona where they parted company. Farmer ended up in Florida, where he was arrested and extradited to Nevada.

In July of 1982 Farmer was convicted in Washoe County, Nevada, of armed robbery and second degree kidnaping with use of a deadly weapon in relation to an incident (hereinafter referred to as the Cobb case) that preceded the Kane murder. In August of that year, he was indicted on the charges that arose out of the Gelunas episode. Then, in February of 1983, he was convicted of first degree murder and possession of a stolen vehicle (also in Washoe County) in relation to the Thomas Kane incident.

In March of 1984, having previously plead not guilty, then not guilty by reason of insanity, Farmer plead guilty to the Gelunas charges *viz*., first degree murder with use of a deadly weapon and robbery with use of a deadly weapon. In its notice of intent to seek the death penalty, the State indicated that it would seek to prove the following aggravating circumstances: (1) the murder was committed by a person who was previously convicted of another murder or of a felony involving the use or threat of violence to the person of another (specifically the aforementioned murder, robbery, and kidnaping in Washoe County); (2) the murder was committed while the person was engaged, or was an accomplice, in the commission of or an attempt to commit robbery and burglary; (3) the murder involved torture,

depravity of mind, or the mutilation of the victim; and 4) the murder was committed by a person under sentence of imprisonment.

After presenting the State's case at the penalty hearing, the prosecutor explained to the court that he did not think that the prior murder or violent felony aggravating circumstance applied because, even though the crimes had occurred prior to the Gelunas murder, the convictions in the two Washoe County cases had not been obtained until after the murder. Docket #5, exhibit 4, p. 108-11. The prosecutor also expressed reservations about the applicability of the "torture, depravity of mind, or mutilation" and "under sentence of imprisonment" aggravators. *Id*.

At the conclusion of the penalty hearing in May of 1984, the panel found two aggravating circumstances: (1) that the murder had been committed during the commission of a robbery, and (2) that the murder had been committed during the commission of a burglary. Finding no mitigating circumstances, the court imposed the death penalty. The record before this court is silent as to any conclusions or findings by the panel with respect to the remaining aggravating circumstances. In 1985, the Nevada Supreme Court clarified that the prior murder or violent felony aggravating circumstance applied as long as the defendant stood convicted of the crime "at the time of the introduction of that evidence in the penalty phase." *Gallego v. State*, 711 P.2d 856, 864 (Nev. 1985). Farmer's convictions and sentence were upheld on direct appeal by the Nevada Supreme Court. Several years of post conviction proceedings in the state court and this court followed. Then, in 2005, Farmer sought relief in state court based on the then-recent *McConnell* decision. When the Nevada Supreme Court subsequently determined that the *McConnell* holding applied retroactively, the State of Nevada conceded that Farmer was entitled to relief under *McConnell*. A month later, however, the State filed a new notice of intent to seek the death penalty (hereinafter referred to as amended notice) in which it alleges the following aggravating circumstances: (1) the murder was committed by a person who was previously convicted of another murder (i.e., the Kane murder), (2) the murder was committed by a person who was previously convicted of a felony involving the use or threat of violence to the person of another (i.e., the robbery in the Cobb case), and (3) the murder was committed by a person who was previously convicted

of a felony involving the use or threat of violence to the person of another (i.e., the kidnaping in the Cobb case).

On January 23, 2008, Farmer filed a motion to strike the State's amended notice, arguing that a retrial on the same aggravators contained in the original notice would violate the Double Jeopardy Clause. The state district court denied the motion, entering an order on April 9, 2008. Farmer then sought essentially the same relief on the same grounds in the Nevada Supreme Court by filing, on May 20, 2008, a petition for writ of mandamus or, in the alternative, a writ of prohibition. On September 11, 2008, the Nevada Supreme Court denied the petition.

Farmer filed the instant federal habeas petition on July 14, 2009. After requesting and receiving two extensions of time in which to respond to the court's order to show cause, respondents filed the aforementioned motion to dismiss.

*Discussion*

As noted, Farmer contends that the Double Jeopardy Clause of the Fifth Amendment prohibits the State of Nevada from pursuing the death penalty against him based on aggravating circumstances alleged in his prior sentencing proceeding. Because Farmer is not challenging the convictions for which he is currently incarcerated, the State disputes whether 28 U.S.C. § 2241(c)(3) confers jurisdiction on this court in this case. That question was recently resolved, however, by the Ninth Circuit in *Wilson v. Belleque*, 554 F.3d 816 (9th Cir. 2009).

In *Wilson*, the court held that the petitioner was "in custody" for the purposes of § 2241(c)(3) even though he was bringing a double jeopardy challenge to a pending retrial on charges separate from those upon which he was currently being detained. 554 F.3d at 824. In addition, Farmer's double jeopardy claim presents an exception to the general rule that a federal court must abstain from interfering in ongoing state criminal proceedings. *See Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

The Double Jeopardy Clause assures three basic protections – it protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after

conviction, and multiple punishments for the same offense. *See United States v. Ursery*, 518 U.S. 267, 273 (1996); *Witte v. United States*, 515 U.S. 389, 395-96 (1995). In *Bullington v. Missouri*, 451 U.S. 430 (1981), the Supreme Court held that the clause applies to capital-sentencing proceedings where such proceedings "have the hallmarks of the trial on guilt or innocence." *Id*. at 439.

Any argument that the clause does not apply to Nevada's capital sentencing proceedings was foreclosed by the Supreme Court's decisions in *Ring v. Arizona*, 536 U.S. 584 (2002) and *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003). In *Ring*, the Court held that the Sixth Amendment requires aggravating circumstances be proven to a jury before the death penalty may be imposed because the aggravating circumstances "operate as the functional equivalent of an element of a greater offense" than a non-capital version of the same offense. 536 U.S. 609 (internal quotation marks omitted). In *Sattazahn*, the Court interpreted *Bullington* to hold that, for the same reason, the Fifth Amendment's Double Jeopardy Clause applies to capital sentencing proceedings. 537 U.S. at 111 (plurality opinion of Scalia, J., joined by Rehnquist, C.J., and Thomas, J.), 125 n.6 (opinion of Ginsburg, J., joined by Stevens, J., Souter, J., and Breyer, J., dissenting on other grounds). *See also Harrison v. Gillespie*, 596 F.3d 551, 563 (9th Cir. 2010) (explaining that sentencing under Nevada's death penalty scheme is essentially a trial for the purposes of the Double Jeopardy Clause).

The Supreme Court established, long ago, that the Double Jeopardy Clause places no restriction on the state's power to retry a defendant who has succeeded in getting his first conviction or sentence set aside. *North Carolina v. Pearce*, 395 U.S. 711, 719-720 (citing *United States v. Ball*, 163 U.S. 662 (1896) and several subsequent cases). Where a defendant has been acquitted, however, the "underlying purposes of the Double Jeopardy Clause" apply with far greater force. *U.S. v. Scott*, 437 U.S. 82, 91 (1978). The court in *Harrison* explained:

> A defendant cannot be retried for an offense of which he has been expressly acquitted, through a not guilty verdict, or impliedly acquitted, through a guilty verdict on a lesser included offense that occurs after the jury has had a full and fair opportunity to reach a verdict and has not reported deadlock on the greater offense.

596 F.3d at 562 (citations omitted).

Though sentenced to death in the initial proceeding, Farmer argues that he is protected by the Double Jeopardy Clause because the three-judge panel impliedly acquitted him of all the aggravating circumstances contained in the State's amended notice. *Green v. United States*, 355 U.S. 184 (1957) is a case frequently cited to explain the concept of implied acquittal. In *Green*, the jury in the defendant's first trial was given the opportunity to find the defendant guilty of first degree murder or second degree murder. 355 U.S. at 189-90. The jury returned a verdict of second degree murder, but that conviction was reversed and the case remanded for a new trial. *Id*. at 190. The Supreme Court held that a second trial on the first degree murder charge (after which the jury found him guilty) violated the defendant's rights under the Double Jeopardy Clause because the jury had impliedly found him not guilty on the same charge in the first trial. *Id*. at 191.

While the imposition of lesser sentence can be construed, under the right circumstances, as an implied acquittal of the death penalty, Farmer is asking this court to expand the doctrine beyond bounds established by existing double jeopardy jurisprudence. In *Bullington*, the Court held that the State was barred from seeking the death penalty at the defendant's retrial because the jury's imposition of a sentence of life imprisonment at his first trial meant that he had already been acquitted of the death penalty. 451 U.S. at 445. In *Arizona v. Rumsey*, 467 U.S. 203, 211-212, (1984), the Court held that a sentence of life imprisonment amounted to an implied acquittal for the alternative sentence of death even though it was based on erroneous construction of the law governing a particular aggravating circumstance. 203 U.S. at 211-12.

Farmer cannot point to a controlling case, however, in which a death sentence in the initial proceeding, even if later found defective, has been construed as an implied acquittal of the death penalty. In *Poland v. Arizona*, 476 U.S. 147 (1986), the Court rejected a double jeopardy challenge to a death sentence in a second proceeding where the Arizona Supreme Court had found, in setting aside the death penalty in the first proceeding, that there was insufficient evidence to support the lone aggravating circumstance found by the trial court. In doing so, the Court decided that the Double Jeopardy Clause was not implicated even though the death penalty in the second proceeding was based on an aggravating

circumstance alleged by the State, but found not proved by the trial court, in the first proceeding. 476 U.S. at 149-50.

The *Poland* decision contains language ostensibly fatal to Farmer's instant double jeopardy claim:

> We reject the fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an "acquittal" of that circumstance for double jeopardy purposes. *Bullington* indicates that the proper inquiry is whether the sentencer or reviewing court has "decided that the prosecution has not proved its case" *that the death penalty is appropriate*. We are not prepared to extend *Bullington* further and view the capital sentencing hearing as a set of minitrials on the existence of each aggravating circumstance. Such an approach would push the analogy on which *Bullington* is based past the breaking point.

*Id*. at 155-56 (emphasis in original, footnote omitted). Farmer argues, however, that *Ring* and *Sattazahn* represent a doctrinal shift from this stance by equating individual aggravating circumstances with elements of the greater offense of capital murder. Thus, according to Farmer, the three-judge panel's failure to find prior murder or violent felony aggravating circumstances in the first sentencing means that he has been acquitted of the capital murder now alleged by the State.

Even in *Sattazahn*, however, the Court recognized that an indispensable component of an implied acquittal of the death penalty is that, at some point, either a judge, jury, or reviewing court must make findings that legally entitle the defendant to a life (or lesser) sentence. 537 U.S. at 109-10, 113. *See also*, *Bobby v. Bies*, ___ U.S. ___, 129 S.Ct. 2145, 2151-52 (2009). That has not occurred in Farmer's case. The three-judge panel decided to sentence Farmer to death based on findings that warranted such punishment under then-existing law. Since that determination, no reviewing court has made a finding that the State failed to carry its burden to prove that the death penalty is an appropriate punishment.

The Supreme Court's opinion in *Bies* supports the conclusion that the State is not twice placing Farmer in jeopardy by pursuing the death penalty at his new penalty hearing. In *Bies*, the state court had ordered a re-examination of a capital defendant's mental state after the Supreme Court determined in *Atkins v. Virginia*, 536 U.S. 304 (2002), that mentally retarded defendants are categorically exempt from execution. 129 S.Ct. at 2149. The Sixth Circuit granted the defendant habeas relief based on the Double

7

Jeopardy Clause, concluding that the Ohio Supreme Court's pre-*Atkins* determination as to the defendant's mental retardation not only barred further litigation of the issue under *Ashe v. Swenson*, 397 U.S. 436 (1970), but also established the defendant's "legal entitlement to a life sentence" as discussed in *Sattazahn*. 129 S.Ct. at 2151.

In summarily rejecting the latter conclusion, the Supreme Court stated:

> . . . At the time Bies was sentenced and on direct appeal, *Penry* [*v. Lynaugh*, 492 U.S. 302 (1989)], not *Atkins*, was this Court's guiding decision. Under *Penry*, no single mitigator or aggravator was determinative of the judgment. Instead, the dispositive issue, correctly comprehended by the Ohio courts, was whether "the aggravating circumstances outweigh[ed] the mitigating factors beyond a reasonable doubt."

129 S.Ct. at 2152 (citations omitted). This excerpt reinforces the notion that a death sentence that is legally and factually sound at the time that it is issued will not be transformed into an implied acquittal by subsequent case law. Perhaps more damaging to Farmer's case, however, is the Court's holding that the defendant's mental capacity could be re-litigated because the state court's previous findings on the issue "were not necessary to the judgments affirming his death sentence." *Id*.

In this case, the three-judge panel in the initial proceeding made no explicit finding on the prior murder or violent felony aggravating circumstances alleged by the State. But even if the panel's silence is construed as findings or determinations favorable to Farmer, those determinations were not necessary or essential to the trial court's final judgment inasmuch as the court found that the death sentence was warranted based on other factors.[2]

Finally, the State's effort to retry Farmer on the prior murder or violent felony aggravating circumstances aggravating circumstances does not "implicate any of the 'perils against which the Double Jeopardy Clause seeks to protect.'" *Sattazahn*, 537 U.S. at 114 (quoting dissent by Ginsburg, J.). Instead of repeated prosecutions by the State, this case involves repeated efforts by Farmer to set aside

---

[2] Farmer overlooks this requirement in asserting that the issue preclusion aspect of the Double Jeopardy Clause applies to his case. Docket #3, p. 13. Moreover, there is some question as to whether the prior murder or violent felony aggravating circumstances were even litigated in the initial proceeding given that the prosecution arguably abandoned them at the penalty hearing. *See Bies*, 129 S.Ct. at 2152.

8

1 his capital sentence. And, more specifically, Farmer not been placed in the perilous position that
2 provides the primary justification for the "implied acquittal" doctrine – i.e., having to choose whether
3 give up his right to file a potentially meritorious appeal or a final judgment guaranteeing a penalty less
4 severe than that to which he might be exposed on retrial. *See Green*, 355 U.S. at 193-94.

5      For the foregoing reasons, no event has occurred in this case that has had the effect of terminating
6 Farmer's initial jeopardy as to the death penalty. Consequently, there is no constitutional impediment
7 to the State seeking the death penalty against him based on the aggravating circumstances currently
8 alleged in Farmer's pending state court proceeding. The court shall deny Farmer's petition on that basis
9 without reaching the remaining procedural defenses raised by the respondents.

10      **IT IS THEREFORE ORDERED** that the "Petition For A Writ Of Habeas Corpus Pursuant To
11 28 U.S.C § 2241 By A Person In State Custody" (docket #3) is DENIED.

12      **IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly.

13      **IT IS FURTHER ORDERED** that the respondents' motion to dismiss (docket #18) is DENIED
14 as moot

15      **IT IS FURTHER ORDERED** that the Clerk shall serve a copy of this order, on the following,
16 by certified mail:

17           David Roger
          Clark County District Attorney
18           200 South Third Street, 5th Floor
          Las Vegas, NV 89155
19

20      Dated this 20th day of April, 2010.

21

22

23                                     UNITED STATES DISTRICT JUDGE

24

25

26